Mr. Rodman may it please the court, my name is Jason Scott Rodman and I represent the Hortansia Lothridge. This is an appeal from the social security disability ruling under titles, really subchapters two and 16. It's a step five case. So under the regulations that carry out the statute, at step five, there is a portion of the burden that shifts. So it shifts to the commissioner to establish that the claimant in light of the age, education, job experience, and functional work capacity is capable of performing other work and that such work exists in the national economy. And so I'm going to tie all of this back really both arguments to a statutory site that captures a lot of the same things I assert in the briefing and it's at 42 USC 423 D. And it's that by statute, the commissioner shall consider the combined effect of all the individuals impairments without regard to whether such impairment, if considered separately, would be of sufficient severity. And then it goes on to talk about how the combined impact of impairments is the test for disability. And so I'm going to talk about two things today. First off, how the concentration persistence pace problems are unaccounted for in the residual functional capacity that is put forth by the administrative law judge. And then second off, I'm going to talk about how the compliance problems that this woman who went through special ed and barely reached SGA in her entire working career. Substantial gainful activity limits? Yeah. It's excuse me. Yes. Substantial gainful activity limits. I think there were two in which she made $10,000. And in general, her compliance problems, there should have been a consideration that those were indicative of and consistent with mental health limitations themselves. So I'm going to go a little bit further into the concentration persistence pace and how it affects the RFC argument. So really, there's a laundry list of impairments. It's not just one or two or a narrow range of things in this case. This is a massive mental health case. So I mean, from bipolar I, OCD, PTSD, even some of the rarer psychological conditions appear in this case. Also sleep problems with the variability that can associate the effect of that. But in addition, the pain and physical problems that aren't always borne out by the objective medical evidence and end up showing up in things like myalgias, arthralgias, and fibromyalgia suggestive of a mental health grants the physical impairments a certain amount of credibility and ties them to a physical RFC. And yet they do not appear to show up significantly in the mental health RFC. But they're part of it. And they need to be part of it. They need to be by statute part of the combined consideration. And then on page 16 of 22, the administrative law judge actually admits that the core, the RFC, the mental health RFC could be characterized as simply simple routine tasks with restrictive. Let me let me add to Judge Hamilton's point. We are generalists and our ability to understand what you are saying would be significantly aided if you stopped using these initialisms and use real English words. You're right, Your Honor. And forgive me. I think that the word I used or the phrase I used, I think it's an RFC in its residual functional capacity. I mean, the practice avoiding the initials. What I'm getting at in my argument is a more general concept, specifically that the RFC is anticipated by the statute and regulations. It's very hard. It is, but it's worth practicing. The residual functional capacity is is is is is anticipated by the statute and the regulations implementing it to be highly responsive and individualized, including to how a person may or may not. Mr. Rodman, can I ask you to focus in a little more specifically here? The government is telling us that the ALJs, I think we get that one, but an ALJs decision here about the residual functional capacity does take sufficient account of the and persistence. Could you address that point in particular, whether the ALJ, without repeating concentration, pace and persistence, took sufficient account of them? I guess I would respond by giving a few examples. And a lot of these are in the briefing of things that were not in the residual functional capacity, but showed up in treatment notes and the like. And so, that would be helpful. Okay. And in general, I usually preface this with saying it's not my burden to do, but I'm happy to do if it helps resolve the case. So, requiring rest or staying at home. And that's cited in the reply brief. Having a doctor indicate that she cannot work for a full period, whether that's tied to pain or some other reason. And then the administrative law judge talks about a therapist having written a note saying she couldn't work. Well, in general, therapists and doctors don't just willy-nilly write notes saying people can't work. And yes, that's an issue reserved to the commissioner, but it's strong evidence and serious stuff's going on. And then also needing one-on-one help for at least periods. And that's indicative of where she's assigned and indicated that she needs a case management order. And it's also consistent with the fact that she needed one-on-one help in school and thereafter barely managed to work substantial gainful activity. And then that inattentiveness, depression, and an unstable mood was treated. And then the treating was adjusted. And it often didn't respond reliably to medications. And then also checking things. So, the obsessive-compulsive disorder element did not appear in the residual functional capacity. The decision-making problems and the need for additional explanation, not simply giving it. I know that that portion is included in the judge's discussion of concentration, persistence, and pace or pace. But there's also evidence that she needed extra explanation. That's why she would need help someone with her portions of time. And in general, as I talked at the beginning, there was an element in which there was a variability to these things that also was not accounted for in the residual functional capacity. And I would like to Certainly, counsel. Mr. Hensley. Thank you, your honor. May it please the court. I'm Jay Hensley. I represent the appellee in this case. For starters, your honors, the appropriate standard in this case, of course, is substantial evidence review, which generally calls for deference to the administrative law judge who was at the hearing, heard the testimony, saw the witnesses, and that sort of thing. Miss Lotheridge's biggest hurdle in this case, your honors, involves her basic inability to answer a basic question. What evidence supports greater limitations than those adopted by the administrative law judge? Miss Lotheridge is unable to direct this court's attention to any specific measurable evidence that would warrant greater mental limitations than those adopted by the ALJ in her residual functional capacity. Mr. Hensley, I understood the problem a little differently, I guess, which is whether the ALJ's decision is internally consistent. Given the findings the ALJ made about limitations on, excuse me, concentration, pace, and persistence, when he was discussing step three of the analysis with the moderate limitations there, and where do we see those accounted for by the ALJ in his residual functional capacity analysis other than trying to, I guess, infer them, which would tend to pose an SEC against Chenery problem? Yes. Well, your honor, in developing the residual functional capacity determination, the ALJ did offer a specific explanation for accommodating her severe mental impairments, specifically by finding that she was limited to simple work-related decisions, simple instructions and tasks, and then occasional interaction with supervisors and coworkers. In doing this, the ALJ specifically discussed her approach to assessing the mental residual functional capacity by acknowledging that Ms. Lothridge had deficits in concentration, persistence, or pace, but finding only that this rating adversely affected her ability to follow written instructions and to explain instructions to others. During the hearing, Ms. Lothridge was asked to testify to some of her limitations in this area, and it was noted that she needed some of the questions repeated, and she was in some distress during the hearing, but she did manage to answer all the questions effectively, in fact, asked her own questions, and she did stay until the end of the hearing. Also, there's evidence that supports the ALJ's residual functional capacity finding. Dr. Davidson, the consultative psychologist, that Ms. Lothridge's long-term memory was intact. She was able to recall four digits forward and three backward. On short-term recall, Ms. Lothridge was easily able to repeat four out of four words, three out of four after a delay. But how does that address the evidence that the ALJ acknowledged about her getting frustrated easily, not handling stress, well, some challenges with concentration? The ALJ certainly acknowledged those issues, but I don't see where they translated to the residual functional capacity. By limiting her, Your Honor, to simple, just simple work-related decisions and simple instructions and tasks, we would suggest this is consistent with some of the court's other recent holdings. For example, in the Josephic case, which we cite in our brief, the residual functional capacity in that case was similar to this one, with simple, routine, repetitive tasks requiring no more than occasional contact with supervisors and coworkers, and this was in conjunction with moderate limitations in concentration, persistence, or pace. Also, in Saunders, this court stated that, like here, the claimant never once has told us what other restrictions the ALJ should have included in her hypothetical. And in Petluski, the court found that the ALJ properly tied the residual functional capacity to the evidence by limiting him to simple, routine, repetitive tasks and simple work-related decisions. So in the absence of specific, quantifiable, measurable limitations that are evident in the record, we would suggest that, as in those cases, this court should find that the ALJ's residual functional capacity determination was adequate and properly accounted for. Sorry, I blacked out for a second there. Properly accounted for the evidence of record. I also would point out the recent rule revisions by the Social Security Administration do make a that a moderate rating means simply that a claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. So it does not, it's a moderate limitation is not reflective of necessarily real restrictive limitations. It's a rating that has a How does that fit with the timing of the ALJ's decision here? It is applicable in this case. It was in, I believe, March of 2017. I know it was in 2017. It's a new definition of moderate. It's found that in the regulations at 20 CFR 404.1520A. And I know that it is effective in this case. I don't have the exact effective date, but it is definitely applicable in this case. So our argument in this case, the decisions make it clear that there are no magic words that are required to accommodate a moderate concentration persistence based rating. Instead, an ALJ has to look at the evidence. The ALJ did look at the evidence in this case. And explain how she arrived at her conclusions. And the residual functioning capacity of determination sufficiently addressed how Ms. Lothridge's moderate rating in concentration persistence or pace affected her ability to stay on task. And the evidentiary record just did not warrant limitations beyond those contained in the hypothetical. With little to no actual objective evidence of limitations, we submit that Ms. Lothridge is asking that this court improperly reweigh the evidence. In addition to asking the court to reweigh the evidence, which precedential Seventh Circuit authority says is improper, she's also asking for a categorical rule pertaining to moderate concentration persistence or pace limitations that, as I've alluded to, this court has previously not recognized. She's also finally asking the court to consider new arguments that she failed to raise in district court, which the court has said is improper. So the common theme running through the decisions that we cite in our brief that are recent is that the court insists that an ALJ has to consider the evidentiary record and account for limitations that are supported by the record. However, at the same time, these cases all provide examples of this court's refusal to apply a categorical rule in every concentration persistence or pace case. Because this case is distinct, it should be deviewed on its own facts. So in accordance with, yes. We've so far avoided a categorical rule, but that seems to put us in the position of trying to read tea leaves in an awful lot of these cases. If there's not a clear path laid out from the limitations on concentration, pace, and persistence to particular limits in the residual functional capacity. That's not a question, it's a comment after having seen a series of these cases. Yeah. Your Honor, I would cite to the Urbana case. In Urbana, this court has said or actually has asked whether the ALJ's phrasing quote, specifically excludes those tasks that someone with the claimant's limitations would be unable to perform. Here, in the absence of evidence, actual, again, measurable evidence that Ms. Lothridge had additional limitations that the we submit that this court should find that the ALJ's determination and corresponding hypothetical to the vocational expert were appropriate to the record. The burden on, this is on appeal, and the burden is on the claimant to show a lack of substantial evidence, which the Bistec Court and the U.S. Supreme Court has said an ALJ should receive great deference. So, in the absence of evidence showing that the ALJ failed to consider crucial evidence, we ask for a decision upholding the ALJ's decision. And I see- Thank you, Mr. Leitzel. I'm happy to ask- Anything further, Mr. Rodman? Briefly, Your Honor. This case seems to be about a claimant's rights under the statute and the highly individualized and responsive residual functional capacity with the applicable hypotheticals asks. The vocational expert in this case indicates only relying on, or having only reviewed vocational things, and I think that's AR 736, so I don't think there's allegations that the vocational expert in this case did a medical analysis of his own, so that's not an issue. The recent rule change the commissioner's briefing itself admits really is not apposite because it simply reaffirms and clarifies that the rule is the same as it's been since 1985. In terms of some of the other arguments that were in the briefing that were there's a potential SEC versus chainery problem there, and I wanted to point out that the non-compliance ties back to the job history and decision-making problems, and I request that you remand and I thank you for your time. Thank you, Mr. Rodman. The case is taken under advisement.